UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KARIN S. BLAIS-PECK,               )
                                         )
     Plaintiff,                   )
                                         )
       v.                    )
                                         )      Civil Action No. 14-cv-30084-KAR
CAROLYN W. COLVIN,          )
Acting Commissioner of the       )
Social Security Administration,    )
                                         )
     Defendant.                )

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS AND
DEFENDANT'S MOTION TO AFFIRM THE COMMISSIONER'S DECISION
(Dkt. Nos. 11 & 16)

ROBERTSON, U.S.M.J.

I.     Introduction

      This action seeks review of a final decision by Defendant, the Acting Commissioner of

Social Security ("Commissioner"), denying the application of Plaintiff Karin S. Blais-Peck

("Plaintiff") for Supplemental Security Income ("SSI").[1] Plaintiff applied for SSI on June 15,

2011, alleging an onset date of April 15, 2009, due to problems stemming from fibromyalgia,

attention deficit disorder ("ADD"), anxiety, depression, irritable bowel syndrome ("IBS"), and

back pain. (A.R. at 197-205, 224). The application was denied initially and on reconsideration

(*id.* at 119-124, 127-132). After a hearing on April 15, 2013, at which Plaintiff alleged disability

due to various impairments including chronic pain, depression, anxiety, and fibromyalgia, the

administrative law judge ("ALJ") found that Plaintiff was not disabled and denied Plaintiff's

---

[1] A copy of the Administrative Record (referred to herein as "A.R.") has been provided to the court under seal (Dkt. No. 10).

claim (*id.* at 14-21).  The Appeals Council denied review (*id.* at 1-5), making the ALJ's decision

the final decision of the Commissioner.  This appeal followed.

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff appeals on the grounds that the

ALJ did not consider all of the evidence of record and thus erred in concluding that her mental

impairments were non-severe.  Pending before this court are Plaintiff's motion for judgment on

the pleadings requesting that the Commissioner's decision be reversed or remanded for further

proceedings (Dkt. No. 11), and the Commissioner's motion for an order affirming the decision

(Dkt. No. 16).  The parties have consented to this court's jurisdiction.  *See* 28 U.S.C. § 636(c)

and Fed. R. Civ. P. 73.  For the reasons stated below, the court will deny Plaintiff's motion for

judgment on the pleadings and allow the Commissioner's motion to affirm.

II.    Background

A.    Educational and Occupational History

Plaintiff was 39 years old at the time of the hearing, with a high school education.  (A.R.

at 29, 225).  Plaintiff's relevant employment history includes work as an administrative assistant,

cashier, assembler, and personal care attendant (*id.* at 225).

B.    Mental Impairments[2]

On August 6, 2009, Kelly Duffy, LCSW, performed an initial evaluation on Plaintiff at

Valley Psychiatric Services (*id.* at 296).  Plaintiff reported a history of depression, anxiety, and

ADD, and stated that she was overwhelmed by problems in her marriage and parenting stress (*id.*

at 300).  Ms. Duffy noted that while Plaintiff was easily distracted, Plaintiff's behavior appeared

---

[2] Plaintiff has not challenged the ALJ's assessment of her restrictions based on her physical
impairments.  Accordingly, the court does not address those impairments and the resulting
restrictions, other than to note their existence and the fact that the ALJ found that Plaintiff's
medically determinable impairments could reasonably be expected to cause the alleged
symptoms (A.R. at 19).

to be within normal limits (*id*. at 296, 300).  Plaintiff was observed to be fully oriented, with an anxious and depressed mood, and her speech, eye contact, cognition, and judgment were all observed to be normal (*id*. at 300).  Ms. Duffy diagnosed Plaintiff with depression not otherwise specified ("NOS"), possible ADD, and a Global Assessment of Functioning ("GAF") score of 58[3] (*id.* at 301).  In December 2010, Plaintiff's GAF score was listed as 60, in June 2011 it was 65,[4] and in December 2011 it was listed at 56 (*id*. at 335, 340, 534).

On October 29, 2009, following an initial medical evaluation at Valley Psychiatric, Kimberly Gage, APRN, reported that Plaintiff had a depressed mood, anxiety, "attention problems," and a restricted affective range, and offered diagnoses of depressive disorder NOS and attention deficit hyperactivity disorder ("ADHD") (*id.*at 332).  Ms. Gage also reported that Plaintiff had normal judgment, insight, and speech, as well as logical, goal-directed thoughts (*id.*).  Plaintiff was prescribed Ativan, Wellbutrin, and an increased dose of Zoloft (*id.*).  On December 30, 2009,[5] Ms. Gage noted Plaintiff was in good spirits and that her medications were effective, without side effects (*id.* at 295).  On April 9, 2010, Ms. Gage noted that Plaintiff's mood, thought content, and behavior were all within normal limits, and reported that Plaintiff was in good spirits and appeared relaxed (*id*. at 293).  On September 19, 2011, Plaintiff was seen at Valley Psychiatric by Dr. Redstone who reported that while Plaintiff was discouraged with her

[3] A GAF score between 51 and 60 reflects moderate symptoms or moderate difficulty in social, occupational, or school functioning.  *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psych. Assoc., 4th ed., 2000) ("DSM-IV").  The fifth edition of the DSM no longer employs the GAF score, although the Social Security Administration ("SSA") has indicated that it will continue to receive into evidence and consider GAF scores.  *See* SSA Administrative Memorandum 13066 (July 22, 2013).
[4] A GAF score between 61 and 70 reflects "[s]ome mild symptoms (e.g., depressed mood and mild insomnia)."  *See DSM-IV* at 34.
[5] The date printed on the top of this session note is December 30, 2009.  The date noted on the signature line, however, is February 17, 2010.  For consistency with Plaintiff's and Defendant's memoranda, the court will use the date at the top of all session notes as the date of note.

3

physical health issues, she was "[e]uthymic[6] essentially in spite of her discomfort and annoyance" (*id*. at 341).

On March 27, 2012, Carol Field, LICSW, met with Plaintiff for the first time.  Ms. Field did not assess Plaintiff's GAF on that date—and in fact, did not assess a GAF score until October 28, 2012—but did note that Plaintiff voiced uncertainty and concern about her physical ailments (*id*. at 627).  Over the next twelve months, Ms. Field's progress notes track Plaintiff's descriptions of her current situation (*id.* at 587-626).  In the progress note from April 24, 2012, Plaintiff described her physical pain and possible treatment, as well as her partner's recent job loss (*id.* at 626).  On May 8, 2012, Plaintiff described how her ADD interfered with planning a project for Mother's Day (*id.* at 624).  In the June 6, 2012 progress note, Plaintiff described her pain and noted that her partner was taking an EMT course and looking for work (*id.* at 623).  The progress note from June 26, 2012 includes Plaintiff's description of her children's living situation and Plaintiff's excitement over an upcoming camping trip (*id*. at 622).  On July 11, 2012, the progress note includes Plaintiff's report that "her depression has not been a problem, that the medication helps" and Plaintiff's description of a successful camping outing (*id.* at 620).  In the July 18, 2012 progress note, Ms. Field includes a description of Plaintiff's good mood, noting Plaintiff had "[n]o other worries or concerns other than managing her chronic pain" (*id.* at 619).  On July 25, 2012, Ms. Field's note includes a description of Plaintiff's thoughts on dealing with clutter in her home and how Plaintiff's new pain medication was not helping (*id.* at 618).  On August 1, 2012, the progress note describes Plaintiff's concerns over financial challenges and her partner's failure to pass the EMT course (*id.* at 617).  In the August 22, 2012 progress note, Plaintiff described her financial stress and voiced the belief that her back would hurt less if she

---

[6] Euthymia is defined as "joyfulness; mental peace and tranquility."  *Stedman's Medical Dictionary* 678 (28th ed. 2006).

had less stress (*id.* at 615).  On September 12, 2012, the progress note describes Plaintiff as "most concerned about finances" and notes that Plaintiff details how she and her partner are dealing with their financial difficulties through careful spending (*id.* at 614).  On September 26, 2012 and October 24, 2012, the progress notes detail Plaintiff's description of increases in her physical pain (*id.* at 611-612).

On October 28, 2012, Ms. Field conducted an Outpatient Mental Status Exam on Plaintiff, finding Plaintiff's eye contact, speech, perception, mood, affect, thought content, thought process, intellectual functioning, memory, insight, orientation, and judgment all to be within normal limits (*id.* at 605).  Additionally on October 28, 2012, Ms. Field conducted an Outpatient Adult Comprehensive Assessment in which she noted that Plaintiff described financial struggles as a major source of stress, and that Plaintiff experienced anxiety as evidenced by "worrying" and "feeling stressed out," but further noted that Plaintiff had no problem areas in activities of daily living (*id.* at 608).  Ms. Field assessed Plaintiff's GAF at 50 and again noted that Plaintiff experienced anxiety, but also observed that Plaintiff "manages to deal with stress from her ill health and financial difficulties with a positive attitude" (*id.* at 609).

On November 11, 2012, Ms. Field noted Plaintiff's description of her chronic pain and her financial challenges (*id.* at 604).  On November 14, 2012, Ms. Field's progress note detailed Plaintiff's description of her financial struggles and health problems (*id.* at 603).  On January 2, 2013, the progress report includes Plaintiff's description of increased pain in her back, legs, and wrist, and Plaintiff's concern about her child's health, but goes on to note that Plaintiff has "[n]o other worries or concerns" (*id.* at 602).  On January 9, 2013, Ms. Field noted Plaintiff's description of new and continuing physical pain and her continuing financial stress (*id.* at 601).

Ms. Field further noted Plaintiff's plan to meet with a lawyer for her Social Security Disability claim and described Plaintiff's hope for a retroactive settlement (*id.*).

On January 23, 2013, without explanation, Ms. Field lowered Plaintiff's GAF score to 48 (*id.* at 599), where it remained for all of Ms. Field's subsequent treatment notes (*id.* at 589-97). On February 14, 2013, Plaintiff reported excitement about her partner's new job and an upcoming trip to a water park with her children, but also reported continued physical difficulties and pain, and a "depressed and upset period over a recent weekend" (*id.* at 595). On February 28, 2013, Ms. Field noted Plaintiff's description of physical difficulties and further, that Plaintiff was not interested in medications for ADD (*id.* at 591). On March 14, 2013, Ms. Field noted Plaintiff's concerns about her physical condition, as well as Plaintiff's concern about her Social Security Disability appeal, and whether a letter reporting depression and anxiety would make a difference if Ms. Field was unable to say that the conditions prevented Plaintiff from working (*id.* at 589). Subsequently on April 2, 2013, Ms. Field wrote a letter stating: "It is my opinion that [Plaintiff's] anxiety and depression contribute to her current inability to work" (*id.* at 631).

### C. State Agency Evaluations

In October 2011, a state agency evaluator reviewed the record and opined that Plaintiff had severe affective disorder and ADD, but that she could sustain attention and concentration for simple tasks in two-hour spans throughout an eight-hour day and keep pace in a normal work week (*id.* at 77, 79-80). In February 2012, a second state agency evaluator further opined that Plaintiff could work in a regular, full-time routine at an average, if varying pace, with occasional slowing for detailed tasks (*id.* at 116).

D.  Hearing Testimony

Plaintiff testified at the hearing that in the past she held positions as a skilled assembler, administrative assistant, cashier, and personal care attendant, and that she was now unable to work due to pain in her lower back, hips, knees, ankles, and neck (A.R. at 31).  Upon further questioning, Plaintiff testified that without her pain, she would be able to work full-time at a job similar to her past positions (*id.*).  Plaintiff stated that she was getting treatment for anxiety (*id.* at 57), and that her symptoms included experiencing a "memory fog" and feeling "tense [and] nervous" (*id.* at 62).  When asked if the treatment was helping, Plaintiff responded that it was, and that although she was still experiencing anxiety, the treatment provided Plaintiff with coping mechanisms—such as taking deep breaths and sitting in a quiet room—which Plaintiff would use to calm herself down (*id.* at 63).  Plaintiff further testified that she had to "constantly . . . write things down" and that she needed reminders to take medication and to go to appointments (*id.* at 66).

An impartial vocational expert ("VE") also testified at the hearing. The ALJ posed a hypothetical question to the VE asking her to identify jobs that would be available for an individual with the residual functional capacity for sedentary work, with the requirement of a sit-stand option and the further limitation that the individual could only remember and carry out simple instructions (*id* at 68).  The VE identified three jobs available for such an individual: telephone order clerk, surveillance system monitor, and ticket checker (*id.*).

III.    Discussion

A.  Standard of Review

The District Court may enter a judgment affirming, modifying, or reversing the final decision of the Commissioner, with or without remanding for rehearing.  42 U.S.C. § 1383(c)(3).

Judicial review "is limited to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000). The court reviews questions of law *de novo*, but must defer to the ALJ's findings of fact if they are supported by substantial evidence. *Id.* (citing *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir.1999) (per curiam)). Substantial evidence exists "'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion.'" *Irlanda Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (quoting *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981)). In applying the substantial evidence standard, the court must be mindful that it is the province of the ALJ, and not the courts, to determine issues of credibility, resolve conflicts in the evidence, and draw conclusions from such evidence. *Id*. at 769. As long as the substantial evidence standard is met, the ALJ's factual findings are conclusive even if the record "arguably could support a different conclusion." *Id.* at 770. That said, the Commissioner may not ignore evidence, misapply the law, or judge matters entrusted to experts. *Nguyen*, 172 F.3d at 35.

B. <u>Standard for Entitlement to Supplemental Security Income</u>

A claimant is disabled for purposes of receiving SSI if she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is unable to engage in any substantial gainful activity when she "is not only unable to do h[er] previous work, but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a

8

specific job vacancy exists for h[er], or whether [s]he would be hired if [s]he applied for work."
42 U.S.C. § 1382c(a)(3)(B).

The Commissioner evaluates a claimant's impairment under a five-step sequential
evaluation process set forth in the regulations promulgated under the statute. *See* 20 C.F.R. §
416.920. The hearing officer must determine: (1) whether the claimant is engaged in substantial
gainful activity; (2) whether the claimant suffers from a severe impairment; (3) whether the
impairment meets or equals a listed impairment contained in Appendix 1 to the regulations; (4)
whether the impairment prevents the claimant from performing previous relevant work; and (5)
whether the impairment prevents the claimant from doing any work considering the claimant's
age, education, and work experience. *See* 20 C.F.R. § 416.920(a)(4). *See also Goodermote v.
Sec'y of Health & Human Servs,* 690 F.2d 5, 6-7 (1st Cir. 1982) (describing the five-step
process). If the hearing officer determines at any step of the evaluation that the claimant is or is
not disabled, the analysis does not continue to the next step. *See* 20 C.F.R. § 416.920(a)(4).

Before proceeding to steps four and five, the Commissioner must make an assessment of
the claimant's "residual functional capacity" ("RFC"), which the Commissioner uses at step four
to determine whether the claimant can do past relevant work and at step five to determine if the
claimant can adjust to other work. *See* 20 C.F.R. § 416.920(e). "RFC is an administrative
assessment of the extent to which an individual's medically determinable impairment(s),
including any related symptoms, such as pain, may cause physical or mental limitations or
restrictions that may affect his or her capacity to do work-related physical and mental activities."
Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (July 2, 1996). "Work-related
mental activities generally . . . include the abilities to: understand, carry out, and remember
instructions; use judgment in making work-related decisions; respond appropriately to

supervision, co-workers and work situations; and deal with changes in a routine work setting." *Id.* at *6. The claimant has the burden of proof through step four of the analysis. *Goodermote*, 690 F.2d at 7. At step five, the Commissioner has the burden of showing the existence of other jobs in the national economy that the claimant can nonetheless perform. *Id.*

C. The ALJ's Decision

To determine whether Plaintiff was disabled, the ALJ conducted the five-part analysis required by the regulations. At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 15, 2011, the application date (A.R. at 16). At the second step, the ALJ found that Plaintiff's IBS and fibromyalgia constituted severe impairments and that Plaintiff's depressive disorder, anxiety, ADD, and mild lumbar spondylosis were all non-severe impairments (*id.*). [7] At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in Appendix 1 (*id.*). Before proceeding to step four, the ALJ found that Plaintiff had the RFC to perform sedentary work, so long as she had the option to sit or stand as needed, with the caveat that she could remember and carry out only simple instructions (*id.*). At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work (*id.* at 19). At step five, relying on the hearing testimony of the impartial vocational expert, the ALJ concluded that after "considering the claimant's age, education, work experience, and [RFC], there [were] jobs that exist[ed] in significant numbers in the national economy that the claimant [could] perform" and that therefore, Plaintiff was not disabled (*id.* at 20-21).

---

[7] The ALJ did not evaluate the severity of Plaintiff's mental impairments pursuant to 20 C.F.R. § 416.920a as required under the regulations.

D.  Plaintiff's Objections

Plaintiff contends that the ALJ erred in his step two conclusion that Plaintiff's mental impairments were non-severe because he did not consider all the substantial evidence and because he "fail[ed] to offer any support for his sweeping conclusions aside from a vague reference to the record as a whole" (Dkt. No. 12 at 7, 12).  In response, the Commissioner argues that the ALJ's finding that Plaintiff's mental impairments were non-severe was supported by substantial evidence, and moreover, because Plaintiff's mental impairments were properly addressed in the RFC, any error in the step two findings is harmless (Dkt. No. 17 at 12-13).  The court agrees with the Commissioner.

The ALJ's conclusion that Plaintiff's mental impairments were non-severe is supported both by Plaintiff's hearing testimony and by her longitudinal history.  It is not enough for Plaintiff to be diagnosed with certain impairments; Plaintiff must provide evidence that these impairments significantly limit her physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 416.920(c); *Grady v. Astrue*, 894 F. Supp. 2d 131, 141 (D. Mass. 2012).  The ALJ was entitled to take note of and rely on Plaintiff's statement at the hearing that it was her pain and not her mental impairments that prevented her from working (A.R. at 31).  The ALJ further relied on Plaintiff's longitudinal history, which he found, did "not bear out a debilitating degree of functional limitations" (*id.* at 19).  Contrary to Plaintiff's assertion that "there is no evidence in the record to support [the ALJ's] conclusion" (Dkt. No. 12 at 12), there is ample evidence in the record that conflicts with the observations on which Plaintiff relies to establish the severity of her mental impairments.

For example, on August 6, 2009, Ms. Duffy noted that Plaintiff was fully oriented and that her behavior, including speech, eye contact, cognition, and judgment, appeared to be within

normal limits (A.R. at 296, 300).  On April 9, 2010, Ms. Gage noted that Plaintiff's mood,

thought content, and behavior were all within normal limits, and reported that Plaintiff was in

good spirits and appeared relaxed (*id*. at 293).  On September 19, 2011, Dr. Redstone reported

that while Plaintiff was discouraged with her physical health issues, she was "[e]uthymic

essentially in spite of her discomfort and annoyance" (*id*. at 341).  On July 11, 2012, Ms. Field

noted Plaintiff's report that "her depression has not been a problem" (*id.* at 620), and on July 18,

2012, Ms. Field described Plaintiff's good mood, noting Plaintiff had "[n]o other worries or

concerns other than managing her chronic pain" (*id.* at 619).  In the Outpatient Mental Status

Exam and Outpatient Adult Comprehensive Assessment conducted on October 28, 2012, Ms.

Field reported that Plaintiff's eye contact, speech, perception, mood, affect, thought content,

thought process, intellectual functioning, memory, insight, orientation and judgment were all

within normal limits (*id.* at 605) and further noted that Plaintiff had no problem areas in activities

of daily living (*id.* at 608).  Ms. Field also observed that Plaintiff "manages to deal with stress

from her ill health and financial difficulties with a positive attitude" (*id*. at 609).  In her progress

report from January 2, 2013 Ms. Field noted that apart from Plaintiff's physical pain and her

children's health, Plaintiff had "[n]o other worries or concerns" (*id.* at 602).

 In support of her assertion that the medical evidence unequivocally supports a finding of

severe mental impairment, Plaintiff stated that she had memory problems and required reminders

to take medications and to go to appointments (*id*. at 66).  The ALJ addressed this testimony in

his decision, finding that her statements were "somewhat credible . . . but not to the extent

alleged," and noting that where Plaintiff's statements were not substantiated by objective

medical evidence, the credibility of the statements was evaluated "based on a consideration of

the entire case record" (*id*. at 17).  Deference is normally given to the ALJ's determination as to

the claimant's credibility as long as it is "rationally supported" by substantial evidence.  *See Staples v. Colvin*, 3:13-cv-30047-KPN at *2 (D. Mass. March 31, 2014); *see also Custodio v. Astrue*, No. C.A. 07-11876-MLW, 2010 WL 3860591, at *2 (D. Mass. Sept. 27, 2010) ("[The] Commissioner may properly consider questions of demeanor and credibility, and his conclusions . . . are entitled to deference by a reviewing court.")  Here, the ALJ stated in his decision that Plaintiff's credibility was undermined both by her failure to comply with medical advice (A.R. at 19), and by the fact that Plaintiff's hearing testimony indicated pain was the main reason for her disability (*id*. at 18-19, 31).  It was proper for the ALJ to consider and rely on this statement in his evaluation of her hearing testimony about the limitations caused by her mental impairments. *See Custodio*, 2010 WL 3860591, at *2.

To the extent that Plaintiff faults the ALJ for not including Plaintiff's lower GAF scores of 50 and 48 in his analysis (Dkt. No. 12 at 10, 12), a low, unaddressed GAF score, on its own, "does not give a fact finder significant insight into whether [the plaintiff] can perform some type of competitive work" and further, "does not undermine the validity of the Administrative Law Judge's decision."  *Querido v. Barnhart*, 344 F. Supp. 2d 236, 246 (D. Mass. 2004); *see also Robert v. Astrue*, 688 F. Supp. 2d 29, 40 (D. Mass. 2010) ("Although a score of 50 indicates serious symptoms that could suggest an inability to hold a job, it does not necessarily mean that a person is unable to meet the basic mental demands of competitive remunerative unskilled work."); *see also Seymore v. Apfel*, 131 F.3d 152, 1997 WL 755386, at *2 (10th Cir.1997) (table) (unpub. op.) (holding the same to be true for a GAF score of 45).  While Plaintiff points to Ms. Field's assessment of Plaintiff's GAF at 50 and 48[8] as an indication of the severity of her

---

[8] A GAF score between 41 and 50 reflects "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)."  *See DSM-IV* at 34.

condition, those scores are inconsistent with Ms. Field's concurrent observation that Plaintiff

"manages to deal with stress from her ill health and financial difficulties with a positive attitude"

(A.R. at 609).

Finally, even if the ALJ erred in finding Plaintiff's mental impairments to be non-severe,

any such error is harmless because the ALJ sufficiently took the non-severe impairments into

consideration when assessing Plaintiff's RFC.  *See Noel v. Astrue*, No. 11-cv-30037-MAP, 2012

WL 2862141, at *6 (D. Mass. July 10, 2012) (holding that even if ALJ erred at step two, any

such error was harmless where ALJ considered all of plaintiff's impairments, severe and non-

severe, when assessing RFC); *Grady*, 894 F. Supp. 2d 131 at 142 (same).  Here, all of Plaintiff's

mental limitations were addressed by the ALJ in his RFC assessment, which included the caveat

that Plaintiff could remember and carry out only simple instructions (A.R.. at 16).  Plaintiff has

failed to produce any evidence that suggests a limitation greater than that acknowledged by the

ALJ in his RFC assessment and, for this reason, she has neither shown "the existence of evidence

in the record supporting her position" nor "demonstrate[d] that the evidence relied on by the ALJ

is either insufficient [or] incorrect. . ."  *See Greene v. Astrue*, No. 11-30084, 2012 WL 1248977

(D. Mass. Apr. 12, 2012) at *3 (emphasis omitted).

IV.    Conclusion

For the reasons stated, Defendant's Motion for Order Affirming the Commissioner's

Decision (Dkt. No. 16) is ALLOWED, and Plaintiff's Motion for Judgment on the Pleadings

(Dkt. No. 11) is DENIED.


IT IS SO ORDERED.                                    /s/ Katherine A. Robertson
                                                    KATHERINE A. ROBERTSON
Dated: August 5, 2015                               United States Magistrate Judge